IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JOYCE EVANS, ET AL., | ) | |
| Plaintiffs, | ) | No. 06-439C |
| v. | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. In support of this motion, we rely upon the complaint and the following brief.

DEFENDANT'S BRIEF

NATURE OF THE CASE

Plaintiffs are growers of raisins in the State of California.[1] Complaint ("Compl.") ¶ 9. They request that the Court award money damages pursuant to the Fifth Amendment of the United States Constitution, based upon allegations that the United States has taken their property without just compensation.

---

[1] Pursuant to Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1997), we accept plaintiffs' allegations as true, but only for purposes of this motion.

## STATEMENT OF THE ISSUE

Whether plaintiffs state a claim upon which relief can be granted pursuant to the Takings Clause of the Fifth Amendment, where they challenge the Government's exercise of power over interstate commerce, and where they voluntarily deliver their raisins to handlers who are subject to the regulations that plaintiffs challenge.

## STATEMENT OF THE FACTS

The Agricultural Marketing Agreement Act ("AMAA"), as amended, 7 U.S.C. § 601, et seq. (2000), was enacted by Congress in 1937. Compl. ¶ 3. The AMAA authorizes the Secretary of Agriculture ("the Secretary") to issue Federal marketing orders regulating the sale and delivery of various commodities, including raisins. Id. The Marketing Order for Raisins Produced from Grapes Grown in California ("Raisin Order") (7 C.F.R. §§ 989.1-989.95 (2004)) was originally promulgated in 1949, and applies to the State of California. Id. ¶ 30.

The AMAA authorizes the Secretary to delegate the responsibility of implementing the marketing order to marketing committees, such as the Raisin Administrative Committee ("RAC"), and to empower those committees to issue rules and regulations. Id. ¶ 12. The RAC consists of forty-seven members, including thirty-five producers, ten handlers, one cooperative bargaining association member, and one public member. Id. ¶ 13. These

members are appointed by the Secretary after industry nomination. Id.

The marketing order provides authority for volume regulation and a grower reserve pool. Id. ¶¶ 3, 30. The volume control provisions are formula driven to compute "free" and "reserve" percentages. Id. ¶¶ 32-33. The reserve pool percentage for each crop year is finalized in advance through published notice in the Federal Register. See id. ¶¶ 26-27, 33. Plaintiffs grow their grapes, pick them, dry them in the field, load them into bins, and truck them to the processing plant for sale or custom packing. Id. ¶ 23. Ordinary raisins in a grower's field or storage area are not designated "free tonnage" or "reserve tonnage" raisins. Id. ¶ 35. The regulatory bifurcation into free tonnage or reserve tonnage occurs upon delivery to a raisin packer.[2] Id. Upon this delivery, the order and the regulations require the raisin packer to physically set the reserve tonnage raisin bins aside and store them for the RAC. Id.

Handlers can sell free tonnage raisins into any market, but must set aside reserve raisins for the RAC, which administers the reserve raisins upon behalf of the growers. Id. ¶ 35. Plaintiffs delivered their raisins to handlers, who paid plaintiffs the field price for the free tonnage portion of the

[2] Pursuant to 7 C.F.R. § 989.15(a) (2004), a "packer" is a "handler." See Compl. ¶ 40 n.6.

crop, and set aside the reserve portion. Id. ¶¶ 27, 35. Net proceeds from sales of reserve raisins are distributed by the RAC to growers in the form of future equity payments. Id. ¶ 36.

## ARGUMENT

### I. Standard Of Review

A motion to dismiss for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy. Perez, 156 F.3d at 1370. In considering such a motion, the Court assumes all well-pled factual allegations as true and makes all reasonable inferences in favor of the non-movant. See id.

### II. Plaintiffs Fail To State A Takings Claim Because They Challenge the Government's Power Over Interstate Commerce And Voluntarily Deliver Their Raisins To Handlers Who Are Subject To The Regulations That Plaintiffs Challenge

Plaintiffs fail to state a claim upon which relief can be granted because their takings claim challenges the Government's legitimate exercise of power over interstate commerce, and because they voluntarily deliver their raisins to handlers who, in turn, are subject to the regulations that plaintiffs challenge. Plaintiffs allege that, "over the past six (6) Crop Year's," the "reserve pool" or "reserve tonnage" mechanism of the Raisin Marketing Order adopted pursuant to the AMAA, 7 U.S.C. § 601, et seq. (2000), and its implementing regulations took their property without just compensation in violation of the Fifth Amendment to the United States Constitution. Compl. ¶¶ 1-

4, 50. Plaintiffs specifically challenge the "reserve pool" mechanism authorized by 7 U.S.C. § 608c(6)(E). Id. ¶¶ 2-3, 51.1. The Court should dismiss the complaint, for two reasons.

First, plaintiffs' takings claim is a challenge to the Government's authority to regulate interstate commerce. The reserve pool mechanism used by the Raisin Marketing Order is authorized pursuant to 7 U.S.C. § 608c(6)(E) (2000), wherein the RAC can designate a portion of the yearly raisin crop as "free-tonnage" for sale without restrictions, and the surplus or "reserve-tonnage" is withheld for sale in secondary, non-commercial markets.[3] Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1359 (Fed. Cir. 2005). The AMAA was originally enacted during the Depression, with the objective of helping farmers obtain a fair value for their agricultural products. Id. at 1358. In enacting the AMAA, Congress declared that "the disruption of the orderly exchange of commodities in interstate commerce impairs the purchasing power of farmers and destroys the value of agricultural assets which support the national credit structure and that these conditions affect transactions in agricultural commodities with a national public interest, and burden and obstruct the normal channels of interstate commerce." 7 U.S.C. § 601 (2000) (emphasis added). One of the policies of

[3] These "volume controls" are set forth at 7 C.F.R. §§ 989.65-989.72 (2004).

the AMAA is "to establish and maintain such orderly marketing conditions for agricultural commodities in interstate commerce as will establish, as the prices to farmers, parity prices . . . ." 7 U.S.C. § 602(1) (2000) (emphasis added). The Raisin Marketing Order, for its part, seeks to stabilize producer returns by limiting the quantity of raisins sold by handlers in the domestic competitive market. Lion Raisins, 416 F.3d at 1359.

The United States Supreme Court has upheld the constitutionality of the AMAA. Id. at 1358 (citing United States v. Rock Royal Co-Op., Inc., 307 U.S. 533, 541, 569, 581 (1939)). The Government's plenary authority over commerce, where it exists, has been described as "complete and perfect." Cal-Almond, Inc. v. United States, 30 Fed. Cl. 244, 247 (1994) (citing and quoting Rock Royal, 307 U.S. at 569), aff'd, 73 F.3d 381 (Fed. Cir. Dec. 20, 1995) (table), cert. denied, 519 U.S. 963 (1996). The Government's legitimate exercise of its power to regulate the flow of agricultural products affecting interstate commerce cannot give rise to a takings claim. See id.; cf. Wallace v. Hudson-Duncan & Co., 98 F.2d 985, 988-90 (9th Cir. 1938) (rejecting takings challenge to 7 U.S.C. § 608c(6)(E) in case involving walnut order).

Second, plaintiffs voluntarily deliver their raisins to handlers knowing that the handlers - and not plaintiffs - are subject to the Raisin Marketing Order and the reserve pool

mechanism in crop years in which a reserve is in effect. Plaintiffs acknowledge that the raisin industry has been regulated for well over fifty years. See Compl. ¶ 30. The Raisin Marketing Order was initially promulgated in 1949. California Raisin Order, Section 610 Review, 71 Fed. Reg. 4,805, 4,805 (Jan. 30, 2006). It has been amended twelve times, most recently in 1989. Id. The order divides those involved in the raisin industry into two categories--handlers and producers, and applies directly only to handlers. Lion Raisins, 416 F.3d at 1359. The order does not apply to producers in their capacity as producers, unless they seek to market California raisins out-of-state or they pack raisins within California, thereby becoming handlers pursuant to the order. See id. at 1359 & n.1; 7 U.S.C. §§ 608c(1), (13)(B) (2000); 7 C.F.R. §§ 989.14, 989.15(b) (2004).

Plaintiffs, however, allege that they are producers, and that they make no claims as handlers. Compl. ¶ 9. The regulations that they challenge (id. ¶¶ 3, 51.1) apply either to the RAC, to handlers, or to both; they impose no obligations or restrictions upon producers. See 7 C.F.R. §§ 989.54(a), (b), (d); 989.56; 989.66; 989.166, 989.167 (2004). For example, plaintiffs challenge 7 C.F.R. § 989.56 (2004) (Compl. ¶ 3), but no producer is required to participate in the "raisin diversion program" that is described in that regulation. 7 C.F.R. § 989.56(b) (2004).

Plaintiffs do not allege that the Government invades their fields and seizes their raisins, that they are forced to introduce their raisins into interstate commerce, or even that the Raisin Marketing Order requires that they deliver their raisins to handlers. Rather, plaintiffs "grow their grapes, pick them, dry them in the field, load them into bins, and truck them to the processing plant for sale or custom packing." Compl. ¶ 23 (emphasis added). According to plaintiffs, ordinary raisins in a grower's field or storage area are not designated free tonnage or reserve tonnage raisins; rather, "[t]he regulatory bifurcation occurs upon delivery to a raisin packer." Id. (emphasis added). Plaintiffs allege that "[u]pon this delivery, the Order and Regulations require the raisin packer to physically set the Reserve Tonnage raisin bins aside and store them for the RAC . . . ." Id. (emphasis added). However, once its raisins are transferred to the RAC, a producer no longer has a property interest in the raisins themselves, but only in its share of the reserve pool proceeds as defined by the regulations. Lion Raisins, 416 F.3d at 1369 n.9.

In addition, although plaintiffs seek damages for the last six crop years allegedly suffered as a result of the reserve pool mechanism (Compl. ¶ 4), that mechanism has been in use since the mid-1990's. Lion Raisins, 416 F.3d at 1360. Producers have advance notice of a reserve for a given crop year through

publication in the Federal Register. See Compl. ¶¶ 26-27, 33. Because plaintiffs voluntarily deliver their raisins to handlers who are subject to the reserve pool mechanism in crop years in which it is in effect, the application of that mechanism to their raisins does not constitute a taking.[4] Cf. Carruth v. United States, 224 Ct. Cl. 422, 445-46, 627 F.2d 1068, 1081 (1980) (rejecting takings challenge to Federal peanut regulation where the petitioners "were familiar with the terms and conditions of the [peanut price support] program," and where their property was not confiscated or appropriated by the Government); Wallace, 98 F.2d at 989 (rejecting takings challenge to 7 U.S.C. § 608c(6)(E) where there was "no direct appropriation of property from the [plaintiff]" and where "[t]he Order contain[ed] no absolute requirement of the delivery of walnuts to the Control Board"); Cal-Almond, 30 Fed. Cl. at 246-47 (rejecting takings challenge to 7 U.S.C. § 608c where the plaintiffs had been active

[4] Moreover, plaintiffs are members of a group that have a hand in regulating the interstate raisin market. The RAC, the body nominated, in part, by producers to represent the interest of producers as well as of the industry in general (see 7 C.F.R. §§ 989.26, 989.29(b)(2), 989.30 (2004)), recommends the free and reserve tonnages to the Secretary and distributes the net proceeds from the disposition of all reserve tonnage raisins to the producer pool. See 7 C.F.R. §§ 989.54(b), (d); 989.66(h) (2004). That raisin producers play a role in the administration of the system that plaintiffs challenge further undermines plaintiffs' takings claim. Cf. Prune Bargaining Assoc. v. Butz, 444 F. Supp. 785, 793 (N.D. Cal. 1975) (rejecting prune producers' claim that prune price fixing was a taking where producers helped select committee that fixed the price), aff'd, 571 F.2d 1132 (9th Cir.), cert. denied, 439 U.S. 833 (1978).

participants in the almond industry throughout its regulation, citing Nebbia v. New York, 291 U.S. 502 (1934)).

Because plaintiffs challenge the Government's legitimate exercise of power over interstate commerce and voluntarily deliver their raisins to handlers knowing that those handlers are subject to volume control regulations, plaintiffs fail to state a claim upon which relief can be granted.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court dismiss the complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Mark A. Melnick
by s/Brian M. Simkin
MARK A. MELNICK
Assistant Director

s/Timothy P. McIlmail
TIMOTHY P. MCILMAIL
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 514-4325
Fax: (202) 514-7965
Attorneys for Defendant

July 31, 2006

Certificate of Filing

I hereby certify that on July 31, 2006, a copy of the foregoing Defendant's Motion To Dismiss was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Timothy P. McIlmail