**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **Evans, et al.** | **Case No. 1:06-cv-00439-CFL** |
| **Plaintiff(s),** | **Charles F. Lettow, Presiding** |
| **v.** | |
| **United States of America,** | **Plaintiffs' Brief Opposing Defendant's Motion to Dismiss** |
| **Defendant.** | |

**INTRODUCTION**

1. This is a physical, not regulatory, takings case. The Government confuses these two concepts inappropriately. The difference between the two is stark: a per se physical taking case occurs where the government deprives one of, and takes ownership of, property… land, or crops, or intellectual property, etc. A regulatory taking occurs when the government prohibits use of property, without taking ownership rights. Plaintiffs' raisins were, and are, physically taken from them by the Government, re-titled to the RAC which is a USDA agent, and sold by RAC as RAC raisins. This all occurs under the umbrella of the *AMAA* of 1937 and regulations thereunder. The taking is complete, physical and real, not incomplete, nonphysical or one that merely limits use. This is a simple, direct *Fifth Amendment* case. Just compensation is due here because the Government affirmatively asserts complete ownership, dominion and control over private property, ousting the rights of plaintiffs of title, possession and use of their raisins.

2. The *Marketing Order for Raisins Grown from Grapes in California* (*Raisin Order*) (7 CFR §§ 989.1-989.95) compels physical taking of tangible property – billions of raisins in thousands of raisin bins and in some years as much as 47% of the

crop. Once taken, the raisins become government and RAC property. Plaintiffs cannot possess, sell, pledge, or consume the taken fruit. The taking is part of the Reserve Raisin program under Raisin Order volume regulations (7 CFR §§ 989.65-98); it is a complete, total, not partial, taking. During and after taking the government physically identifies, segregates, transports, sells and delivers as its own, raisins filling bins produced by Plaintiffs. Title, possession, and all incidents of control pass to the government.

3. No court has ever held the *Commerce Clause* trumps, eliminates or eviscerates the *Takings Clause* in a physical takings case. Congress may allow the permanent deprivation of a citizen's physical property. The Government simply must pay fair market value. It has not. *Loretto Teleprompter* and its progeny compel a denial of the Government's motion.

**Statement of the Issue**

4. May the Government permanently deprive Plaintiffs of all right, title, possession and control to their physical raisins without compensation?

5. May such a taking occur under a regulatory scheme which may include some other unchallenged provisions that are constitutionally compliant?

6. Does the *Commerce Clause* grant of federal power eliminate the *Takings Clause* restraint on federal power where Congress chooses to enable industry regulation by a government agency?

**Statement of the Facts**

7. Plaintiffs are independent raisin growers and are raisin producers as defined by 7 *CFR* § 989.11. Raisin "handlers" are excluded from Plaintiff's class; Plaintiffs are not "handlers". (Complaint ¶ 9).

8. The Raisin Administrative Committee (RAC) was created by the Raisin Order and administers much of it. (Complaint ¶ 12). The RAC is an agent of the USDA and USA for purposes of this litigation.[1] (Complaint ¶ 14).

9. The RAC recommends interim Free Tonnage and Reserve Raisin percentages on or before October 5th each Crop Year, and final percentages on or before each February 15th. The final recommendation is submitted to the Secretary of Agriculture for approval. 7 CFR § 989.54(b) to (d). The Secretary then acts upon the recommendation by publishing the final binding "Free Tonnage" and "Reserve Tonnage" raisin percentages in the Federal Register. (Complaint ¶ 33).

10. Producers deliver all their raisins to a packer, but are paid only for the Free Tonnage raisins. Reserve Tonnage raisins are physically set aside, title is transferred to the RAC, and producers are never paid for them. (Complaint ¶ 35).

11. Producers received no money for the taken raisins they raised during the period addressed in the complaint. Producers receive an equity interest in the entire Raisin Pool, but this equity interest is valueless and does not replace property rights taken. (Complaint ¶ 36). The full bundle of property rights in the physical raisins are transferred from Plaintiffs to the RAC as government agent. (Complaint ¶ 43).

---

[1] "[T]he Court of Federal Claims has jurisdiction over takings claims against the United States based on the actions of the RAC, because the RAC is an agent of the United States." *Lion Raisins, Inc. v. United States*, 416 F3d 1356, 1358 (Fed Cl 2005).

**Standard of Review**

12. The Government has admitted all the Complaint's facts for purposes of this motion. A court reviewing a motion to dismiss is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *ATK Thiokol, Inc. v US*, 68 FedCl 612, 626-27 (FedCl 2005) (citing *Henke v US*, 60 F3d 795, 797 (citations omitted)). "When reviewing a dismissal for failure to state a claim upon which relief can be granted under ... Rule 12(b)(6) ... [the court] must accept as true all the factual allegations in the complaint, and ... indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v US*, 241 F3d 1375, 1378 (Fed Cir 2001) (citations omitted). Rules of the Court of Federal Claims 12(b)(6) motions to dismiss are only proper when plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *American Airlines, Inc. v US*, 68 FedCl 723, 728-29 (FedCl 2005), citing *Adams v US*, 391 F3d 1212, 1218 (Fed Cir 2004).

13. A possibility that some viability is present in pled claims defeats a Rule 12(b)(6) motion. *RCS Enterprises, Inc. v US*, 46 FedCl 509, 513 (FedCl 2000) ("claim should be dismissed only when no set of facts exists that would entitle plaintiff to relief"). The Federal Circuit held:

> ….a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.

*Phonometrics, Inc. v. Westin Hotel Co***,** 350 F3d 1242, 1251 (FedCir (Fla) 2003) (citations omitted).

## ARGUMENT

14. This is a physical, not a regulatory, takings case. The Government does not challenge the fact physical takings occur the Plaintiffs; it argues the taking is justified by the Commerce Clause and "voluntary" participation in commerce. The Government is wrong. The Supreme Court's physical takings decisions negate the Government's argument.

### Plaintiffs' Complaint Forcefully Alleges a Physical Taking

15. *U.S. Const Amend V* declares "private property" shall not "be taken for public use, without just compensation." *Board of Regents of State Colleges v. Roth*, 408 US 564, 577, 92 S Ct 2701, 33, LEd 2d 548 (1972). A takings claim's elements are present if (1) private property, (2) is taken, (3) for public use, (4) without just compensation. *US Const Amd V.* The Complaint alleges all these elements.

16. The Supreme Court recently observed:

> The text of the Fifth Amendment itself provides a basis for drawing a distinction between physical takings and regulatory takings. Its plain language requires the payment of compensation whenever the government acquires private property for a public purpose, whether the acquisition is the result of a condemnation proceeding or a physical appropriation. But the Constitution contains no comparable reference to regulations that prohibit a property owner from making certain uses of her private property. Our jurisprudence involving condemnations and physical takings is as old as the Republic and, for the most part, involves the straightforward application of per se rules.

*Brown v. Legal Foundation of Washington*, 538 US 216, 233, 123 SCt 1406 155 L.Ed.2d 376 (2003).

17. The duty to compensate for what the government takes is absolute.

> When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner, … regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof. Thus, compensation is mandated when a leasehold is taken and the government occupies the property for its own purposes, even though that use is temporary. Similarly, when the government appropriates part of a rooftop in order to provide cable TV access for apartment tenants, or when its planes use private airspace to approach a government airport, it is required to pay for that share no matter how small.

*Id*. (internal citations omitted).

18. *Per se* takings include both real property, and identifiable personal property. *Brown, supra* (interest on IOLTA accounts); *Phillips v. Washington Legal Foundation*, 524 US 156, 118 S Ct 1925 (1998) (interest on IOLTA accounts). "There is no doubt that other property interests are also protected by the Fifth Amendment." *Yancey v US,* 915 F2d 1534, 1540 (Fed Cir 1990) (Quarantine destruction of 77% of plaintiff's turkeys was a taking; turkeys were property within the 5th Amendment).

19. Physical and regulatory takings are sharply different. The "acquisition" of property by the federal government is always a *per se* taking, while "prohibition of private use" of property is a regulatory taking. *Norman v. U.S.*, 63 Fed Cl 231, 244 (2004). Plaintiffs' Complaint makes clear a physical taking of raisins occurs.

20. Raisins are private property. The existence of property or a property interest is determined for 5th Amendment takings purposes by reference to "existing rules or understandings that stem from an independent source such as state law." *Phillips v. Washington Legal Foundation*, 524 US 156, 118 S Ct 1925 (1998) (interest income

generated by funds held in IOLTA accounts is the "private property" of the owner of the principal).

21. Raisins are property under California state law. "'Tangible personal property' means personal property which may be seen, weighed, measured, felt, or touched, or which is in any other manner perceptible to the senses." *Cal Rev & Tax Code* § 6016. This clearly establishes a primary takings element and proves the property at issue is physical.

22. The raisins were taken. In other words, the government and the RAC as its agent permanently deprive Plaintiffs of title, possession, and control of their physical property, the raisins, by taking, re-titling, controlling and selling to Plaintiffs' exclusion, as much as 47 out of each 100 tons produced.[2] Once the raisins are transferred to the RAC, the Plaintiffs no longer have a property interest in them. This Court has expressly so held.

> "Of course, once the raisins were transferred to the RAC, Lion no longer had a property interest in the raisins themselves, but only in its share of the reserve pool proceeds as defined by the regulations."

*Lion Raisins, Inc. v. United States*, 416 F3d 1356, 1369 fn3 (Fed Cl 2005).

23. The second takings element is satisfied. The government purports to have an interest in the reserve pool's creation and maintenance for some legitimate purpose, just as it might take a right of way for the legitimate purpose of building roads. Both are lawful; both require just compensation. The public purpose taking element is pled effectively here.

[2] Fractional amounts of crop taken varied from year to year. 47% was the largest fraction taken at relevant times.

24. Plaintiffs purportedly receive an equity interest in the Reserve Raisin Pool, 7 CFR § 989.66(h), but the equity interest is valueless. They do not seek this equity interest; it is thrust upon them as a theoretical interest after their raisins are confiscated. Equity pool substitution for property rights is insufficient compensation for government taking real estate, or tangible personal property. A collectivization pooling cannot replace individual property rights. This is as much true for raisins as it would be in a scheme whereby the government might condemn a building and substitute a nontransferable, non negotiable, bond with an uncertain value but a prospect to make a plausible payment equal to a fraction of the total value of the building… a fraction dependent on the acts of the government as title holder of the building.

25. "When faced with a constitutional challenge to a permanent physical occupation of real property, this Court has invariably found a taking." *Loretto v. Teleprompter Manhattan CATV Corp*., 458 US 419, 427, 102 S Ct 3164, 73 LEd 2d 868 (1982). Personal property is entitled to the same 5th Amendment status as real property; permanent deprivation of the plaintiffs' title, possession, and control of their raisins is a taking for 5th Amendment purposes. *See Phillips*, *supra*.

26. No just compensation has been paid for Plaintiffs' raisins. The final element of the proof of a taking is well pled in the Complaint.

27. "Just compensation generally means the full monetary equivalent of the property taken." *United States v. Reynolds*, 397 US 14, 16, 90 S Ct 803, 25 LEd 2d 12 (1970). In determining the amount of just compensation for a taking, a court seeks to place a claimant in as good a pecuniary position as if the property had not been taken.

*Phillips*, *supra*, 524 US at 177; *citing United States v. 564.54 Acres Land*, 441 US 506, 510, 99 S Ct 1854, LEd 2d 435 (1979). No just compensation has been paid. Plaintiffs do not receive just value for the raisins taken. They receive nothing for the raisins, and their equity position in the reserve pool is virtually worthless, too. (Complaint ¶ 23, 36).

28. All elements of a takings claim are well pled in the Complaint. It cannot be said with certainty that Plaintiffs' Complaint, when proven, entitles Plaintiffs to no relief. Therefore, dismissal is improper.

**B. Commerce Clause is Irrelevant**

29. The *Commerce Clause* grant of federal authority does not trump the *Takings Clause* restraint on federal power. Failure to pay just compensation for physical takings is never justified. *Loretto*, *supra*, 458 US 426. ("We conclude that a permanent physical occupation authorized by government is a taking without regard to the public interests that it may serve."). The Government's contrary position here is not well founded.

30. Plaintiffs do not assert [though do not necessarily concede] the government cannot take their property. Plaintiffs merely seek the next required step in seeking compensation. The *Commerce Clause* may very well authorize the taking, but the *Takings Clause* requires compensation. This principle is no more profound than the fact the government has condemnation power, but must pay compensation.

31. The Federal Circuit and the Supreme Court have already decided the *Commerce Clause/Takings Clause* interaction.

> [T]he Government's proper exercise of regulatory authority does not automatically preclude a finding that such action is a compensable taking. There should be no "blanket exception to the Takings Clause whenever Congress exercises its Commerce Clause authority."

*Yancey v US,* 915 F2d 1534, 1540 (FedCir 1990).

32. In *Yancey*, the Federal Circuit found a turkey quarantine action, resulting in the destruction of plaintiff's turkeys for health reasons, was a valid exercise of federal power, but just compensation was required. *Yancey, supra*.

33. In *Kaiser Aetna v. U.S.*, 444 US 164, 100 SCt 383, 62 LEd2d 332 (1979), Justice Rehnquist wrote for the majority to resolve a claim the government wrongly required public access to a private pond. The Court held regulatory action can be taken by the government under the Commerce Clause, but the Takings Clause requires compensation where a property deprivation occurred.

> [T]his Court has never held that the navigational servitude [enabled by the Commerce Clause] creates a blanket exception to the Takings Clause whenever Congress exercises its Commerce Clause authority to promote navigation.

*Id* at 172.

34. This Court has made it clear that when the government exercises its commerce clause authority to regulate navigation, the Commerce Clause is not a complete defense to a compensable taking.

> The Federal Government's plenary power to regulate navigable airspace is unquestionable. However, just as the aquatic navigational servitude does not afford a blanket exemption from the takings clause of the fifth amendment whenever Congress exercises its commerce clause authority to regulate aquatic navigation, *Kaiser Aetna v. United States*, 444 U.S. 164, 172, 100 S.Ct. 383, 389, 62 L.Ed.2d 332 (1979), the navigational servitude does not preclude

> application of the taking clause when Congress, in acting to regulate aviation, exceeds its reasonable power to regulate.

*Branning v U S*, 654 F2d 88, 98 (CtCl 1981).

35. Congressional declarations in the AMAA indeed assert Commerce Clause authority. 7 USC § 601. But this is irrelevant to the question plaintiffs present. All cases cited by the Government are regulatory taking cases, inapplicable here.

36. The Government's motion to dismiss is without merit.

**C. Raisin Producer Deliveries to Handlers are Neither Voluntary Nor Relevant.**

37. The Government asserts, without case citation:

37.1. Plaintiffs' sales to packers are "voluntary"; and

37.2. The voluntariness is Constitutionally meaningful.

38. Plaintiffs are producers, not handlers or packers. A producer cannot market his/her raisins without preparing the raw raisins for market. The Raisin Order states that a packer/handler is an entity which "stems, sorts, cleans, or seeds raisins, grades stemmed raisins, or packages raisins for market as raisins." 7 CFR §§ 989.14, 989.15.

39. If a producer transfers raw raisins to another person or entity for further sale, that entity must be a handler or packer. The Raisin Order is then triggered, and the challenged volume control regulations (7 CFR §§ 989.65-989.72) apply to the transaction, transferring title of Reserve Raisins to the RAC.

40. The Government is estopped from claiming the transaction triggering the Raisin Order applicability is voluntary, because the U.S. Department of Agriculture takes the exact opposite position in enforcement proceedings under the

AMAA of 1937, the Raisin Order and the Raisin Regulations. In a recent administrative enforcement proceeding against raisin producers attempting to market their own raisins to avoid handlers, and thus the Raisin Order, the USDA asserts that a producer who prepares his/her raw raisins for market automatically becomes a handler/packer, subject to the Raisin Order. This is the relevant excerpt from the USDA brief, establishing its position:

> Section 989.15 of the Raisin Marketing Order defines a "handler" as "[a]ny processor or packer… " 7 CFR § 989.15. Section 989.14 of the order defines a "packer" as "any person who, within the area, stems, sorts, cleans or seeds raisins, grades stemmed raisins, or packages raisins for market as raisins…". 7 CFR § 989.14. The area is the state of California. 7 CFR §989.4. Thus, when the respondents [raisin producers] engage in the activities of a "packer", they became a "handler" under the Order.

*In re Marvin D. Horne, et al*, AMAA Docket No. 04-0002, USDA Proposed Findings of Fact, Conclusions of Law, Order, and Brief in Support Therof, pg 22. (Attachment 1).

41. Assuming, for a moment, voluntariness is relevant, the Government's enforcement practices show producers cannot avoid the Raisin Order's regulatory web.

42. The volume regulations of the Raisin Order compel an uncompensated taking, through a title transfer from Plaintiffs' to the Government's agent, the RAC. Even if marketing raisins was voluntary, no caselaw supports the proposition the Government may take ownership of property when marketed in some markets, but not in others.

## CONCLUSION

43. The Complaint alleges a physical taking. The elements of such a taking are well pled and clearly present on the Complaint's face. Regulations may allow the Government to make the taking, but the absence of compensation is the target of the Complaint. No legal justification for an uncompensated property rights ownership transfer exists. The Government's dismissal motion should be denied.

August 28, 2006.

Named Plaintiffs,

By:**s/ Michael C. Stumo**

Michael C. Stumo (Attorney of Record)
David A. Domina
DOMINALAW Group pc llo
2425 S. 144th Street
Omaha, NE 68144-3267
(402) 493-4100
f: (402) 493-9782
mstumo@dominalaw.com
efiling@dominalaw.com

Brian C. Leighton
Law Offices of Brian C. Leighton
701 Pollasky Avenue
Clovis, CA 93612
(559) 297-6190
f: (559) 297-6194
bleighton@arrival.net

*Attorneys for the Named Plaintiffs*

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **Evans, et al.** | **Case No. 1:06-cv-00439-CFL** |
| **Plaintiff(s),** | **Charles F. Lettow, Presiding** |
| **v.** | |
| **United States of America,** | **Certificate of Service** |
| **Defendant.** | |

I hereby certify that on August 28, 2006, I filed Plaintiff's Brief Opposing Defendant's motion to Dismiss with the Clerk of the Court using the CM/ECF system, which sent notification of such filing all counsel of record.

**s/ Michael C. Stumo**
Michael C. Stumo
Counsel of Record for Plaintiffs