USDA
OALJ/OHC
2005 ? 14 AM 9: 47
RECEIVED

UNITED STATES DEPARTMENT OF AGRICULTURE

BEFORE THE SECRETARY OF AGRICULTURE

In re: ) AMAA Docket No. 04-0002
)
MARVIN D. HORNE and )
LAURA R. HORNE, d/b/a )
RAISIN VALLEY FARMS, *et al.*, )
)
Respondents )

**COMPLAINANT'S PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER, AND BRIEF IN SUPPORT THEREOF**

**Statement of the Case**

This is a disciplinary proceeding under the Agricultural Marketing Agreement Act of 1937, as amended, 7 U.S.C. § 601 *et seq.* ("Act"), instituted by an amended complaint filed on October 25, 2004, by the Administrator of the Agricultural Marketing Service ("AMS"), United States Department of Agriculture ("USDA"). The amended complaint alleged that the respondents violated the Act and the Marketing Order for Raisins Produced from Grapes Grown in California, 7 C.F.R. §§ 989.1-989.95 ("Order"), and the Regulations issued pursuant to the Act, 7 C.F.R. §§ 989.102-989.801 ("Regulations"). An administrative hearing was held in Fresno, California on February 9-11, 2005, before Judge Victor W. Palmer. Complainant was represented by Frank Martin, Jr., Esq., and the respondents were represented by

ATTACHMENT 1

David Domina and Michael Stumo, Esqs. These proposed findings of fact, conclusions of law, and order, and brief in support thereof are submitted pursuant to the Rules of Practice (7 C.F.R. § 1.142).

## I. Complainant's Motion to Amend the Complaint to Conform to the Evidence Should be Granted.

At the close of the hearing, complainant moved to amend the complaint to conform to the proof adduced and litigated at the hearing. (*See* Transcript (Tr.) 1010-1011). Judge Palmer ruled that the motion was timely and asked the parties to address the issue in brief. (Tr. 1010-1011). Complainant requests that the complaint be amended as set forth herein. Section 1.137(a) of the Rules of Practice provides that:

> At any time prior to the filing of a motion for a hearing, the complaint, petition for review, answer, or response to petition for review may be amended. Thereafter such amendment may be made with consent of the parties, or as authorized by the Judge upon showing of good cause.

7 C.F.R. § 1.137(a) (emphasis added).

### 1. There is Good Cause to Amend the Complaint.

There is good cause to allow complainant to amend the complaint. Complainant seeks to make certain amendments in paragraphs 6, 7, 8, 9, 10, 11, and 12 of section II of the complaint based upon the evidence adduced at the hearing. (*See*

*e.g.* CX-1-56, Tr. 216-226). These amendments are technical amendments which in no way prejudice the respondents.

Complainant also seeks to add new party respondents to the jurisdictional allegations of section I of the complaint and to the case caption. It is appropriate to add these new party respondents in this case. The new party respondents are Raisin Valley Farms Marketing, Raisin Valley Farms Marketing Association, the partnership Lassen Vineyards, and the general partners of Lassen Vineyards, Marvin D. Horne, Laura R. Horne, Don Durbahn, and Rena Durbahn. All of these new party respondent individuals were present at the hearing and participated in violating the Raisin Marketing Order. It is clear from the record evidence that the new party respondent entities were created and controlled by the respondents as part of their family's raisin handling operation. (*See e.g.* RX-10, RX-11, RX-12, RX-13, Tr. 930-934, Tr. 956, Tr. 960, Tr. 961-962, Tr. 969, Tr. 971-974, Tr. 976-984).

The new respondents were discovered by complainant based upon the proof introduced by respondents as part of their defense at the hearing. The newly discovered respondents perform various handling functions as part of the family's raisin handling operation. (*See e.g.* RX-8, RX-10, RX-11, RX-12, RX-13, RX-38, RX-150, Tr. 555, Tr. 558, Tr. 560, Tr. 566-568, Tr. 581-

583, Tr. 588-589, Tr. 592-635, Tr. 646-648, Tr. 651-652, Tr. 663-667, Tr. 693-705, Tr. 721-724, Tr. 736-740, Tr. 764-766, Tr. 780-782, Tr. 818, Tr. 821, Tr. 824-826, Tr. 830-833, Tr. 851-852, Tr. 869-871, Tr. 873-880, Tr. 885-914, Tr. 930-934, Tr. 949-951, Tr. 956-974, Tr. 976-979, Tr. 981-984). Moreover, respondents' failure to fully comply with two subpoenas for various records prevented complainant from discovering this information before the hearing. (*See* RX-104, RX-106, CX-153, CX-154, CX-164, Tr. 429-432, Tr. 448-453, Tr. 929-934, Tr. 946-947).

Respondents should not be allowed to escape liability for violating the Raisin Marketing Order by failing to produce records pursuant to valid subpoenas, and by using different family members and entities to perform various handling functions under the Order. All of the new party respondent entities are part of the respondents' raisin handling operation, and were created and controlled by family members for the purpose of circumventing the requirements of the Order.

It is well settled that complainant may amend a complaint to correct substantive defects and technical or procedural defects, and may amend a complaint to add additional allegations, or conform the complaint to proof. Moreover, the Judicial Officer has long held that ALJs should liberally grant motions to amend complaints. *See In re Lindsay Food, Inc.*, 56 Agric. Dec. 1643,

1648-50 (1997) (Remand Order) (citing *In re John T. Gray*, 55 Agric. Dec. 853, 855-57 (1996) (stating that the ALJ's denial of complainant's motion to amend the complaint to add an allegation was in error); *In re Gary R. Edwards*, 52 Agric. Dec. 1365, 1366 (1993); *In re Stienberg Bros. Co.*, 43 Agric. Dec. 1878, 1903 (1984); *In re Onofrio Calabrese*, 51 Agric. Dec. 131, 155 (1992) (affirming the ALJ's ruling allowing complainant to amend the complaint during the hearing to add allegations), *aff'd sub nom. Balice v. United States Dep't of Agric.*, No. CV-F-92-5483-GEB (E.D. Cal. July 14, 1998), *printed in*, 57 Agric. Dec. 841 (1998), *aff'd*, No. 98-16766 (9th Cir. Feb. 8, 2000)). Accordingly, the Court should allow the amendments to the complaint.

2. <u>The Allegations in the Complaint Reasonably Apprised the Respondents of the Issues in Controversy and They Were Afforded Due Process Throughout the Proceeding</u>.

The purpose of an administrative complaint is to give the responding party notice of the charges against them. A complaint is adequate if the party proceeded against "understood the issue" and "was afforded full opportunity" to justify its conduct. *See Golden Grain Macaroni Company v. Federal Trade Commission*, 472 F.2d 882, 885 (9th Cir. 1972), quoted in *In re Livolsi*, 39 Agric. Dec. 1397, 1403 (1980). A careful review of the record in this case leaves little doubt that the respondents understood the issues and were afforded the opportunity to justify their

conduct. In fact, they did not challenge the substance of the allegations, but instead admitted the allegations and asserted that they never "acquired" raisins under the Order. They also challenged the validity of the Order.[1] They introduced evidence that other family members and entities were also involved in the failure to comply with the requirements of the Order.

The respondents cannot realistically assert that they were denied due process in any way. The only witness they called that was involved in the family's raisin handling operation was Marvin D. Horne. Mr. Horne admitted that the individuals and entities that make up the family's raisin handling operation were engaging in handling activities that were subject to regulation under the Raisin Marketing Order. (*See e.g.* Tr. 956, Tr. 960-974, Tr. 976-979, Tr. 981-984). Raisin grower witnesses called by the respondents testified that they dealt with Marvin D. Horne and other family members concerning the family's raisin handling operation. (*See e.g.* Tr. 589-590, Tr. 592-596, Tr. 600-602, Tr. 605-622, Tr. 630-631, Tr. 652, Tr. 654, Tr. 660-666, Tr. 721-724, Tr. 736-740, Tr. 764-766, Tr. 769-770, Tr. 780-782, Tr. 818, Tr. 826). Some raisin grower witnesses called by respondents

---

[1] Respondents cannot challenge the validity of the Raisin Marketing Order in this disciplinary proceeding. In *United States v. Ruzicka*, 329 U.S. 287 (1946), the Supreme Court held that a challenge to a marketing order under the Agricultural Marketing Agreement Act (Act) of 1937 must be brought under section 608c(15)(A)of the Act.

testified that they were involved in a co-packing or custom packing (handling) arrangement with the respondents' family raisin handling operation. (*See e.g.* Tr. 613, Tr. 615-616, Tr. 630, Tr. 675, Tr. 736, Tr. 740-741, Tr. 765, Tr. 821, Tr. 824-826, Tr. 852-855, Tr. 860-861). The evidence adduced at the hearing proves that the respondents used different entities comprised of various family members to act as a custom packer or toll packer for a cash consideration for numerous raisin growers. The respondents also used these same entities to pack their own raisins. (*See e.g.* Tr. 613, Tr. 615-616, Tr. 630, Tr. 652, Tr. 654, Tr. 675, Tr. 736, Tr. 740-741, Tr. 765, Tr. 821, Tr. 824-826, Tr. 852-855, Tr. 860-861, Tr. 958-964, Tr. 976-979, Tr. 981-984).

The record evidence proves that all of the respondents were involved in violating the Raisin Marketing Order. The respondents' failure to call as witnesses the other members of the family's raisin handling operation, Laura R. Horne, Don Durbahn, and Rena Durbahn, to testify was their choice. These respondents were all present at the hearing. "A party's failure to produce a witness, when it would be natural for that party to produce that witness, if the facts known by the witness had been favorable, serves to indicate, as a natural inference, that the party fears to produce the witness. This fear is some evidence

that the witness, if produced, would have exposed facts unfavorable to the party. This principle has been followed in many proceedings before the United States Department of Agriculture [] and in many judicial proceedings []." "It is certainly a maxim that all evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other to have contradicted." "Lord Mansfield in *Blatch v. Archer*, Corp. 66, quoted with approval in Wigmore, evidence § 285 (3d ed. 1940)."[2] The Court should draw

---

[2] *In re Bradshaw*, 59 Agric. Dec. 228 (2000), rev'd on other grounds, 254 F.3d 1081 (Table)(5th Cir. 2001)(unpublished), citing, *inter alia*, *In re Michael McCall*, 52 Agric. Dec. 986, 1010 (1993); *In re Terry Horton*, 50 Agric. Dec. 430, 450 (1991); *In re Great Am. Veal, Inc.*, 48 Agric. Dec. 183, 224-25 (1989), *aff'd*, 891 F.2d 281 (3d Cir. 1989) (unpublished); *In re George W. Saylor, Jr.*, 44 Agric. Dec. 2238, 2487-89 (1985) (Decision on Remand); *In re E. Digby Palmer*, 44 Agric. Dec. 248, 256 n.4 (1985); *In re Dr. Duane O. Petty*, 43 Agric. Dec. 1406, 1425-28 (1984), *aff'd*, No. 3-84-2200-R (N.D. Tex. June 5, 1986); *In re Mattes Livestock Auction, Mkt. Inc.*, 42 Agric. Dec. 81, 101-02, *aff'd*, 721 F.2d 1125 (7th Cir. 1983); *In re Eldon Stamper*, 42 Agric. Dec. 20, 32 n.4 (1983), *aff'd*, 722 F.2d 1483 (9th Cir. 1984); *In re De Graaf Dairies, Inc.*, 41 Agric. Dec. 388, 402-03 (1982), *aff'd*, No. 82-1157 (D.N.J. Jan. 24, 1983), *aff'd mem.*, 725 F.2d 667 (3d Cir. 1983); *In re Great Western Packing Co.*, 39 Agric. Dec. 1358, 1363-64 (1980), *aff'd*, No. CV 81-0534 (C.D. Cal. Sept. 30, 1981); *In re Dr. John Purvis*, 38 Agric. Dec. 1271, 1276-77 (1979); *In re DeJong Packing Co.*, 39 Agric. Dec. 607, 637-38 (1977), *aff'd*, 618 F.2d 1329 (9th Cir.) (2-1 decision), *cert. denied*, 449 U.S. 1061 (1980); *In re Edward Whaley*, 35 Agric. Dec. 1519, 1522 (1976); *In re Braxton McLinden Worsley*, 33 Agric. Dec. 1547, 1571-72 (1974); *Bufco Corp. v. NLRB*, 147 F.3d 964, 971 (D.C. Cir. 1998); *Underwriters Labs., Inc. v. NLRB*, 147 F.3d 1048, 1054 (9th Cir. 1998); *Ready Mixed Concrete Co. v. NLRB*, 81 F.3d 1546, 1552 (10th Cir. 1996); *In re The Produce Place*, 53 Agric. Dec. 1715 (1994).

an adverse inference that if the other members of the family's raisin handling operation were called as witnesses, they would have admitted involvement in the family's raisin handling operation.

For all of the above reasons, complainant respectfully requests that Judge Palmer grant its motion to conform the complaint to the evidence adduced and litigated at the hearing as set forth below.[3]

3. The numbered paragraphs contained in the jurisdictional allegations in section I of the amended complaint should be amended to read as follows:

1. Respondents Marvin D. Horne and Laura R. Horne are individuals, doing business as Raisin Valley Farms, Raisin Valley Farms Marketing, and Raisin Valley Farms Marketing Association, whose business mailing address is 3678 N. Modoc, Kerman, California 93630. At all times mentioned herein, respondents were engaged in the business as a "handler" of California raisins as that term is defined in the Act and the Order. (Tr. 868-870, Tr. 873-875, Tr. 960).

2. Respondent Lassen Vineyards is a general partnership whose business mailing address is 2267 N.

[3] Citations to the transcript are added to the allegations only for the purpose of showing where the material is located in the transcript.

Lassen, Kerman, California 93630. Respondents Marvin D. Horne, Laura R. Horne, Don Durbahn, and Rena Durbahn are the partners in respondent Lassen Vineyards and at all times mentioned herein were acting on behalf of the partnership and of each other. At all times mentioned herein, respondent Lassen Vineyards was a "handler" of California raisins as that term is defined in the Act and the Order. (RX-12, Tr. 873, Tr. 961).

3. Respondent Marvin D. Horne is an individual whose business mailing address is 3678 N. Modoc, Kerman, California 93630. At all times mentioned herein, respondent Marvin D. Horne was a general partner in respondent Lassen Vineyards, and a "handler" of California raisins as that term is defined in the Act and the Order. (RX-12, Tr. 873, Tr. 961).

4. Respondent Laura R. Horne is an individual whose business mailing address is 3678 N. Modoc, Kerman, California 93630. At all times mentioned herein, respondent Laura R. Horne was a general partner in respondent Lassen Vineyards, and a "handler" of California raisins as that term is defined in the Act and the Order. (RX-12, Tr. 873-874, Tr. 961).

5. Respondent Don Durbahn is an individual whose business mailing address is 2267 N. Lassen, Kerman, California 93630. At all times mentioned herein, respondent Don Durbahn was a general partner in respondent Lassen Vineyards, and a "handler" of California raisins as that term is defined in the Act and the Order. (RX-12, Tr. 873, Tr. 961).

6. Respondent Rena Durbahn is an individual whose business mailing address is 2267 N. Lassen, Kerman, California 93630. At all times mentioned herein, respondent Rena Durbahn was a general partner in respondent Lassen Vineyards, and a "handler" of California raisins as that term is defined in the Act and the Order. (RX-12, Tr. 873, Tr. 961).

4. <u>The following numbered paragraphs in section II of the amended complaint should be amended to read as follows:</u>

6. The respondents violated section 989.58(d) of the Order (7 C.F.R. § 988.58(d)), on six occasions by failing to obtain incoming inspections for approximately 9,820 pounds of raisins for crop year 2002-2003. (CX-82-87, Tr. 76-79, Tr. 186-187, Tr. 217-220, Tr. 966).

7. The respondents violated section 989.58(d) of the Order (7 C.F.R. § 989.58(d)), on fifty-two

occasions by failing to obtain incoming inspection for approximately 2,066,066 pounds of raisins for crop year 2003-2004. (CX-3-54, CX-56, Tr. 90, Tr. 97-99, Tr. 222-223, Tr. 967-970).

8. The respondents violated section 989.66 of the Order (7 C.F.R. § 989.66) and section 989.166 of the Regulations (7 C.F.R. § 989.166), by failing to hold in reserve for 294 days approximately 24.7 tons of Natural Sun-dried Seedless raisins for crop year 2002-2003, and by failing to pay $9,752.80, to the RAC for raisins that they failed to hold in reserve. (CX-1, CX-2, CX-82-88, CX-161, Tr. 76-79, Tr. 217-221, Tr. 965, Tr. 973).

9. The respondents violated section 989.66 of the Order (7 C.F.R. § 989.66) and section 989.166 of the Regulations (7 C.F.R. § 989.166), by failing to hold in reserve for 298 days approximately 305.6 tons of Natural Sun-Dried Seedless raisins for crop year 2003-2004, and by failing to pay $247,536, to the RAC for raisins that they failed to hold in reserve. (CX-3-54, CX-89, CX-93, Tr. 90, Tr. 222-225, Tr. 973).

10. The respondents violated sections 989.80 of the Order (7 C.F.R. § 989.80), by failing to pay assessments to the RAC of approximately $222.60 for

crop year 2002-2003. (CX-1, CX-2, CX-82-87, Tr. 76-79, Tr. 217-222, Tr. 972-973).

11. The respondents violated section 989.80 of the Order (7 C.F.R. § 989.80), by failing to pay assessments to the RAC of approximately $5,951.63 for crop year 2003-2004. (CX-3-54, Tr. 90, Tr. 222-226, Tr. 972-973).

12. The respondents violated section 989.77 of the Order (7 C.F.R. § 989.77), by failing to allow access to their records to the U.S. Department of Agriculture, even after being served with two subpoenas for such access. (CX-153, CX-154, CX-164, RX-106, Tr. 422-432, Tr. 946-947).

## II. Proposed Findings of Fact

1. Respondents Marvin D. Horne and Laura R. Horne are individuals, doing business as Raisin Valley Farms, Raisin Valley Farms Marketing, and Raisin Valley Farms Marketing Association, whose business mailing address is 3678 N. Modoc, Kerman, California 93630. At all times mentioned herein, respondents were engaged in the business as a "handler" of California raisins as that term is defined in the Act and the Order. (Tr. 868-870, Tr. 873-875, Tr. 960).

2. Respondent Lassen Vineyards is a general partnership whose business mailing address is 2267 N. Lassen, Kerman, California 93630. Respondents Marvin D. Horne, Laura R. Horne, Don Durbahn, and Rena Durbahn are the partners in respondent Lassen Vineyards and at all times mentioned herein were acting on behalf of the partnership and of each other. At all times mentioned herein, respondent Lassen Vineyards was a "handler" of California raisins as that term is defined in the Act and the Order. (RX-12, Tr. 873, Tr. 961).

3. Respondent Marvin D. Horne is an individual whose business mailing address is 3678 N. Modoc, Kerman, California 93630. At all times mentioned herein, respondent Marvin D. Horne was a general partner in respondent Lassen Vineyards, and a "handler" of California raisins as that term is defined in the Act and the Order. (RX-12, Tr. 873, Tr. 961).

4. Respondent Laura R. Horne is an individual whose business mailing address is 3678 N. Modoc, Kerman, California 93630. At all times mentioned herein, respondent Laura R. Horne was a general partner in respondent Lassen Vineyards, and a "handler" of California raisins as that term is defined in the Act and the Order. (RX-12, Tr. 873-874, Tr. 961).

5. Respondent Don Durbahn is an individual whose business mailing address is 2267 N. Lassen, Kerman, California 93630. At all times mentioned herein, respondent Don Durbahn was a general

partner in respondent Lassen Vineyards, and a "handler" of California raisins as that term is defined in the Act and the Order. (RX-12, Tr. 873, Tr. 961).

6. Respondent Rena Durbahn is an individual whose business mailing address is 2267 N. Lassen, Kerman, California 93630. At all times mentioned herein, respondent Rena Durbahn was a general partner in respondent Lassen Vineyards, and a "handler" of California raisins as that term is defined in the Act and the Order. (RX-12, Tr. 873, Tr. 961).

7. On or about August 3, 2002, the respondents submitted an inaccurate RAC-1 Form, Weekly Report of Standard Raisin Acquisitions, to the Raisin Administrative Committee (RAC). (CX-62, CX-1, CX-2, CX-82-87, Tr. 76-79, Tr. 188-190, Tr. 217-219).

8. From on or about August 1, 2003 to on or about November 30, 2003, the respondents submitted 13 inaccurate RAC-1 Forms, Weekly Report of Standard Raisin Acquisitions, to the Raisin Administrative Committee (RAC). (CX-63-75, CX-3-56, Tr. 80-101, Tr. 190-197).

9. From on or about August 1, 2003 to on or about November 30, 2003, the respondents submitted 4 inaccurate RAC-20 Forms, Monthly Reports of Free Tonnage Raisin Disposition, to the RAC. (CX-76-79, CX-3-56, Tr. 80-101, Tr. 190-197).

10. During the crop year 2002-2003, the respondents submitted an inaccurate RAC-50 Form, Inventory of Free Tonnage Standard Quality Raisins on Hand, to the RAC. (CX-80, CX-1, CX-2, CX-82-87, Tr. 76-79, Tr. 190-197).

11. During the crop year 2002-2003, the respondents submitted an inaccurate RAC-51 Form, Inventory of off-Grade Raisins on Hand, to the RAC. (CX-81, CX-1, CX-2, CX-82-87, Tr. 76-79, Tr. 190-198).

12. During crop year 2002-2003, the respondents failed to obtain incoming inspections on six occasions for approximately 9,820 pounds of raisins. (CX-82-87, Tr. 76-79, Tr. 186-187, Tr. 217-220, Tr. 966).

13. During crop year 2003-2004, the respondents failed to obtain incoming inspection on fifty-two occasions for approximately 2,066,066 pounds of raisins. (CX-3-54, CX-56, Tr. 90, Tr. 97-99, Tr. 222-223, Tr. 967-970).

14. During crop year 2002-2003, the respondents failed to hold in reserve for 294 days approximately 24.7 tons of Natural Sun-dried Seedless raisins. (CX-1, CX-2, CX-82-88, Tr. 76-79, Tr. 217-221, Tr. 965, Tr. 973). During the 2002-2003 crop year, the producer price for raisins was $394.85 a ton. (CX-161, p. 3 of 5). Respondents failed to pay $9,752.80, to the RAC for raisins they failed to hold in reserve for crop year 2003-2004. (CX-88, CX-161, Tr. 973).

15. During crop year 2003-2004, the respondents failed to hold in reserve for 298 days approximately 305.6 tons of Natural Sun-Dried Seedless raisins. (CX-3-54, CX-89, Tr. 90, Tr. 222-225). During the 2003-2004 crop year, the free tonnage price for raisins was $810 a ton. (CX-93, Tr. 225). Respondents failed to pay $247,536, to the RAC for raisins they failed to hold in reserve for crop year 2003-2004. (CX-89, Tr. 225, Tr. 972-973).

16. During crop year 2002-2003, the respondents failed to pay assessments to the RAC of approximately $222.60. (CX-1, CX-2, CX-82-87, Tr. 76-79, Tr. 217-222, Tr. 972-973).

17. During crop year 2003-2004, the respondents failed to pay assessments to the RAC of approximately $5,951.63. (CX-3-54, Tr. 90, Tr. 222-226, Tr. 972-973).

18. The respondents failed to allow access to their records to the U.S. Department of Agriculture, even after being served with two subpoenas for such access. (CX-153, CX-154, CX-164, RX-106, Tr. 422-432, Tr. 946-947).

## III. <u>Proposed Conclusions of Law</u>

1. On or about August 3, 2002, the respondents violated section 989.73(b) of the Order (7 C.F.R. § 989.73(b)), by

submitting an inaccurate RAC-1 Form, Weekly Report of Standard Raisin Acquisitions, to the Raisin Administrative Committee (RAC).

2. From on or about August 1, 2003 to on or about November 30, 2003, the respondents violated section 989.73(b) of the Order (7 C.F.R. § 989.73(b)), by submitting thirteen inaccurate RAC-1 Forms, Weekly Reports of Standard Raisin Acquisitions, to the RAC.

3. From on or about August 1, 2003 to on or about November 30, 2003, the respondents violated section 989.73(d) of the Order (7 C.F.R. § 989.73(d)), by submitting four inaccurate RAC-20 Forms, Monthly Reports of Free Tonnage Raisin Disposition, to the RAC.

4. The respondents violated section 989.73(a) of the Order (7 C.F.R. § 989.73(a)), by filing an inaccurate RAC-50 Form, Inventory of Free Tonnage Standard Quality Raisins on Hand, to the RAC for crop year 2002-2003.

5. The respondents violated section 989.73(a) of the Order (7 C.F.R. § 989.73(a)), by filing an inaccurate RAC-51 Form, Inventory of Off-Grade Raisins on Hand, to the RAC for crop year 2002-2003.

6. The respondents violated section 989.58(d) of the Order (7 C.F.R. § 989.58(d)), on six occasions by failing to obtain incoming inspections for approximately 9,820 pounds of raisins for crop year 2002-2003.

7. The respondents violated section 989.58(d) of the Order (7 C.F.R. § 989.58(d)), on fifty-two occasions by failing to

obtain incoming inspections for approximately 2,066,066 pounds of raisins for crop year 2003-2004.

8. The respondents violated section 989.66 of the Order (7 C.F.R. § 989.66) and section 989.166 of the Regulations (7 C.F.R. § 989.166), by failing to hold in reserve for 294 days approximately 24.7 tons of Natural Sun-dried Seedless raisins, and by failing to pay to the RAC $9,752.80, the dollar equivalent of the raisins that were not held in reserve for crop year 2002-2003.

9. The respondents violated section 989.66 of the Order (7 C.F.R. § 989.66) and section 989.166 of the Regulations (7 C.F.R. § 989.166), by failing to hold in reserve for 298 days approximately 305.6 tons of Natural Sun-Dried Seedless raisins, and by failing to pay to the RAC $247,536, the dollar equivalent of the raisins that were not held in reserve for crop year 2003-2004.

10. The respondents violated sections 989.80 of the Order (7 C.F.R. § 989.80), by failing to pay assessments to the RAC of approximately $222.60 for crop year 2002-2003.

11. The respondents violated section 989.80 of the Order (7 C.F.R. § 989.80), by failing to pay assessments to the RAC of approximately $5,951.63 for crop year 2003-2004.

12. The respondents violated section 989.77 of the Order (7 C.F.R. § 989.77), by failing to allow access to their records to the U.S. Department of Agriculture, even after being served with two subpoenas for such access.

## IV. Proposed Order

Respondents, Marvin D. Horne and Laura R. Horne doing business as Raisin Valley Farms, Raisin Valley Farms Marketing, and Raisin Valley Farms Marketing Association, Lassen Vineyards, a general partnership whose partners are Marvin D. Horne, Laura R. Horne, Don Durbahn, and Rena Durbahn, jointly and severally, are assessed a civil penalty of $737,000.00, are ordered to pay to the Raisin Administrative Committee (RAC) $6,174.23 in assessments for crop years 2002-2003 and 2003-2004, and are ordered to pay to the RAC $257,288.80 for the dollar equivalent of the raisins they failed to hold in reserve for crop years 2002-2003 and 2003-2004. Respondents shall send a certified check or money order in the amount of $737,000.00, made payable to "Treasurer of the United States." to Frank Martin, Jr., Esq., Office of the General Counsel, Room 2343-South Building, United States Department of Agriculture, Washington, DC 20250-1417, and to pay the assessments and dollar equivalent for raisins that were not held in reserve owed to the RAC, within 10 days after service of this Order on respondents.

## V. Discussion

### 1. The Respondents Violated The Raisin Marketing Order.

The record contains overwhelming evidence that the respondents were engaged in business as a "handler" of California raisins. The

respondents use different entities to perform various handling functions under the Raisin Marketing Order. For example, both Raisin Valley Farms and Lassen Vineyards engage in packing raisins for market. (*See e.g.* Tr. 652, Tr. 660-675, Tr. 736-740, RX-165, RX-166, Tr. 589-590, RX-8, Tr. 592-599, Tr. 601-602, Tr. 606-616, Tr. 764-765, Tr. 780, Tr. 851-852, Tr. 854-855, Tr. 960-965, CX-1-56, CX-112-133, CX-140-150, CX-152, CX-156, CX-162-163, CX-165-166, Tr. 652, Tr. 654, Tr. 660-666, Tr. 736, Tr. 740-741, Tr. 765, Tr. 821, Tr. 824-826). Raisin Valley Marketing and Raisin Valley Marketing Association both handle marketing and financial transactions for the respondents' raisin handling operation. They pack and market the growers' raisins and charge a fee for the toll-packing or custom packing services they perform. They also endorse checks and act as a clearing account to pay the growers who have their raisins packed by the respondents' raisin handling operation. (See e.g. Tr. 874-878, RX-10, RX-11, CX-120 p.2, CX-123 p. 2, CX-159, CX-160, Tr. 619-623). All of the entities are part of the family's raisin handling operation.

As raisin handlers, respondents are required to comply with the Raisin Marketing Order. Respondents refuse to comply with the Order. They assert that they never "acquire" any raisins and therefore are not subject to regulation under the Order. Respondents' assertion is based on an incorrect interpretation of

the term "acquire." The plain language of the Order and the record evidence establish that the respondents "acquire" raisins under the Order and are subject to all of its requirements. A careful review of the record evidence and the applicable order terms clearly support complainant's contention that respondents are "handlers" of California raisins.

2. The Respondents Became A Handler By Packing Raisins For Market.

Section 989.15 of the Raisin Marketing Order defines a "handler" as "[a]ny processor or packer . . . ." 7 C.F.R. § 989.15 (emphasis added). Section 989.14 of the order defines a "packer" as "any person who, within the area, stems, sorts, cleans, or seeds raisins, grades stemmed raisins, or packages raisins for market as raisins . . . ." 7 C.F.R. § 989.14 (emphasis added). The area is the State of California. 7 C.F.R. § 989.4. Thus, when the respondents engaged in the activities of a "packer," they became a "handler" under the Order. The respondents admitted under cross-examination and questioning from Judge Palmer that they are engaging in the packing functions that subject them to regulation as a handler under the Order. (*See e.g.* Tr. 954-955, Tr. 956, Tr. 959-965, Tr. 976-979, Tr. 981-984).

The Order requires that all handlers file certain reports, have their raisins inspected, withhold a percentage of their raisins from market in crop years when a reserve is in effect, and

pay periodic assessments. Once the respondents started engaging in packing raisins for market and became a handler, they were required under the Order to comply with those requirements. The complainant presented uncontroverted evidence that they did not do so. (*See e.g.* CX-1-56, CX-62-87, Tr. 217-227).

The respondents assert that they are exempt from complying with the Order because they do not "acquire" raisins. (*See e.g.* Tr. 965-966, Tr. 970, Tr. 972-974). Respondents' assertion is based on a misinterpretation of the term "acquire" in the Order.

3. The Respondents Acquire Raisins Under The Order.

Section 989.17 of the Order defines the term "acquire" as

> "to have or obtain physical possession of raisins by a handler at his packing or processing plant or at any other established receiving station operated by him . . . ."
> 7 C.F.R. § 989.17 (emphasis added).

The plain language of the definition only requires that a handler have or obtain physical possession of raisins at his packing plant. It is clear from the record evidence that the respondents either have or obtain physical possession of raisins at their packing plant. If they did not have or obtain physical possession of raisins at their packing plant, then they could not perform all of the packing functions that they have admitted performing. (*See e.g.* Tr. 954-955, Tr. 956, Tr. 959-965, Tr. 976-979, Tr. 981-984). It's only logical that a handler, like the respondents, has to have or obtain physical possession of raisins

in order to perform the packing functions of stemming, sorting, cleaning, and grading raisins for market.

The definition of the term "acquire" does not require an ownership interest in the raisins or that the raisins be inspected as the respondents asserted at the hearing. It is clear that the objective of the definition is to make sure that all raisins coming within the scope of the handlers' functions are covered and, conversely, to prevent a way being available whereby a portion of the raisins handled in the area would not be covered. The record evidence proves that the respondents, as a handler, have or obtain physical possession of raisins by receiving them from producers by arrangement for toll packing or custom packing for a cash consideration, or by packing their own raisins. (*See e.g.* Tr. 652, Tr. 660-675, Tr. 736-740, RX-165, RX-166, Tr. 589-590, RX-8, Tr. 592-599, Tr. 601-602, Tr. 606-616, Tr. 764-765, Tr. 780, Tr. 851-852, Tr. 854-855, Tr. 960-965, CX-1-56, CX-112-137, CX-140-150, CX-152, CX-156; *see also e.g.* Tr. 589-590, Tr. 592-596, Tr. 600-602, Tr. 605-622, Tr. 630-631, Tr. 721-724, Tr. 736-740, Tr. 764-766, Tr. 769-770, Tr. 780-782, Tr. 818, Tr. 826; *see also e.g.* Tr. 613, Tr. 615-616, Tr. 630, Tr. 675, Tr. 736, Tr. 740-741, Tr. 765, Tr. 821, Tr. 824-826, Tr. 852-855, Tr. 860-861). The plain language of the Order and the uncontroverted evidence clearly establish that the respondents "acquire" raisins under the Order.

4. The Respondents Failed To Obtain Inspections.

The Raisin Marketing Order requires that handlers obtain both incoming and outgoing inspections of raisins. (7 C.F.R. §§ 989.58(d) and 989.59(d)). During crop year 2002-2003, the respondents failed on six occasions to obtain incoming inspections for approximately 9,820 pounds of raisins. (CX-82-87, Tr. 76-79, Tr. 186-187, Tr. 217-220, Tr. 966). During crop year 2003-2004, the respondents failed on fifty-two occasions to obtain incoming inspections for approximately 2,066,066 pounds of raisins. (CX-3-54, CX-56, Tr. 90, Tr. 97-99, Tr. 222-223, Tr. 967). The uncontroverted evidence clearly establishes that the respondents failed to obtain incoming inspections on fifty-eight occasions during crop years 2002-2003 and 2003-2004.

5. The Respondents Failed To Hold Raisins In Reserve.

Section 989.66 of the Raisin Marketing Order requires each handler to hold in storage a percentage of his raisins until the Raisin Administrative Committee (RAC) notifies the handler that he is relieved of that responsibility. Section 989.166© of the Regulations requires that a handler who fails to hold reserve raisins must compensate the RAC for the cash equivalent of the raisins that were not held in reserve. The uncontroverted evidence clearly establishes that the respondents failed to hold raisins in reserve, and failed to pay the RAC the cash equivalent of the raisins that were not held in reserve.

During crop year 2002-2003, the respondents failed to hold in reserve for 294 days approximately 24.7 tons of raisins. (*See* CX-1, CX-2, CX-82-87, Tr. 76-79, Tr. 217-221, Tr. 965-966, Tr. 973). During the 2002-2003 crop year, the producer price for raisins was $394.85 a ton. (CX-161, p. 3 of 5). Respondents failed to pay $9,752.80, to the RAC for raisins they failed to hold in reserve for crop year 2003-2004. (Tr. 973).

During crop year 2003-2004, the respondents failed to hold in reserve for 298 days approximately 305.6 tons of raisins. (CX-3 thru CX-54, Tr. 90, Tr. 222-225, Tr, 965-966, Tr. 973). The free tonnage price for raisins was $810 a ton in crop year 2003-2004. (CX-93, Tr. 225). Respondents failed to pay $247,536, to the RAC for raisins they failed to hold in reserve for crop year 2003-2004. (Tr. 225).

6. <u>The Respondents Failed To File Accurate Reports</u>.

The Raisin Marketing Order requires handlers to file with the Raisin Administrative Committee reports concerning the inventory, acquisition, disposition, shipment and status of raisins. (7 C.F.R. § 989.73). The uncontroverted evidence clearly establishes that the respondents failed to file accurate reports.

The Order required respondents to file RAC-1 reports with the RAC of their acquisition of raisins. (7 C.F.R. § 989.73(b). For crop years 2002-2003 and 2003-2004, respondents filed 14 inaccurate

RAC-1 reports, and respondent Lassen Vineyards failed to file any reports. (*See* CX-62, CX-1, CX-2, CX-82-87, Tr. 76-79, Tr. 188-190, Tr. 217-219; and CX-63-75, CX-3-56, Tr. 80-101, Tr. 190-197, Tr. 965-966, Tr. 972).

For crop year 2002-2003, the Order required respondents to file a RAC-50 report, Inventory of Free Tonnage Standard Quality Raisins on Hand, with the RAC. (7 C.F.R. § 989.73(a). The respondents filed an inaccurate RAC-50 report, and respondent Lassen Vineyards failed to file the report. (CX-80, CX-1, CX-2, CX-82-87, Tr. 76-79, Tr. 190-197, Tr. 965-966, Tr. 972).

For crop year 2002-2003, the Order required respondents to file a RAC-51 report, Inventory of off-Grade Raisins on Hand. (7 C.F.R. § 989.73(a). The respondents submitted an inaccurate RAC-51 report to the RAC, and respondent Lassen Vineyards failed to file the report. (CX-81, CX-1, CX-2, CX-82-87, Tr. 76-79, Tr. 190-198, Tr. 965-966, Tr. 972).

Finally, for crop year 2003-2004, the Order required respondents to file 4 RAC-20 reports, Monthly Reports of Free Tonnage Raisin Disposition. The respondents submitted 4 inaccurate RAC-20 reports to the RAC, and respondent Lassen Vineyards failed to file the reports. (CX-76-79, CX-3-56, Tr. 80-101, Tr. 190-197, Tr. 965-966, Tr. 972).

7. The Respondents Failed To Pay Assessments.

Section 989.80 of the Order requires handlers to pay certain assessments to the Raisin Administrative Committee. (7 C.F.R. § 989.80). The respondents admitted that they did not pay assessments in crop years 2002-2003 and 2003-2004. (Tr. 966, Tr. 972-973). The Senior Vice President of the RAC, Ronald Worthley, testified that based on the tonnage of raisins that respondents handled, the assessments on their raisins were $222.60 for crop year 2002-2003, and $5,951.63 for crop year 2003-2004. (Tr. 221-222, Tr. 225-226). The uncontroverted evidence proves that respondents failed to pay assessments in crop years 2002-2003 and 2003-2004.

## VI. Conclusion

The complainant proved by a preponderance of the evidence that the respondents, Marvin D. Horne and Laura R. Horne doing business as Raisin Valley Farms, Raisin Valley Farms Marketing, and Raisin Valley Farms Marketing Association, and Lassen Vineyards, a partnership, whose partners are Marvin D. Horne, Laura R. Horne, Don Durbahn, and Rena Durbahn, violated the Act and the Raisin Marketing Order and the Regulations. Handlers who fail to comply with the Order and the Regulations threaten the integrity of the marketing order program. The imposition of penalties against the

respondents will send to other raisin handlers a clear message that the U.S. Department of Agriculture will take the steps necessary to enforce the Raisin Marketing Order and the Regulations. Conversely, a decision not to impose penalties will send the wrong message to those who act as handlers under the Raisin Marketing Order, but fail to comply with the Order's requirements.

The Act provides for the imposition of a $1,100 civil penalty[4] for each violation of a marketing order by a handler, and further provides that "each day during which such violation continues shall be deemed a separate violation." (7 U.S.C. § 608c(14)(B)) (emphasis added). The respondents have been in the raisin business a significant time, and were aware of the Raisin Marketing Order and its requirements. *See e.g.* CX-94-110; RX-100, RX-101, RX-102, RX-111, RX-121, RX-124). The respondents' failure to comply with the Order's requirements must be viewed as deliberate. The respondents' failure to comply with the Order's reserve requirements, in particular, is serious, and affects the entire program. *In re Calabrese*, 51 Agric. Dec. 131, 161 (1992).[5] As the Court in *Calabrese* observed:

---

[4] Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2462 note, the penalty in section 608c(14)(B) of the Act was increased to $1,100. 7 C.F.R. § 3.91(b)(vii).

[5] *See also In re Saulsbury Enterprises, et al.*, 55 Agric. Dec. 6 (1996).

> "The reserve requirements are expressly established to prevent unreasonable fluctuations in the supply and price of a crop year's almond. By withholding a percentage of a crop from sale during peak production period, the Order assures a constant supply of marketable almonds over the period of a year, and minimizes potential swings in prices received by growers. Respondents shipped their almonds into the channels of international commerce totally without regard to the reserve requirements. If other almond handlers were to do the same, the integrity of the Marketing Order program would be quickly eroded." *Id.* at 159.

Respondents' failure to comply with the Order's requirements of holding raisins in reserve, paying assessments, and not getting incoming inspections allowed them to gain a competitive advantage over other handlers who were in compliance with the Order. Respondents' failure to hold raisins in reserve also deprived raisin growers of funds they were entitled to as equity holders in the reserve pool. Respondents' failure to comply with the Order by selling 100% of their raisins in two separate crop years allowed them to reap substantial profits at the expense of other handlers who were complying with the Order, and seriously eroded the integrity of the Order. The respondents' failure to file accurate reports is also serious. "Failure to file a report...are serious violations of the Order...These violations fully warrant the civil penalty of $1,[1]00 each recommended by Complainant." *Id.* at 167; *see also In re Saulsbury Enterprises, et* al., 55 Agric. Dec. 6 (1996); United *States v. Ruzicka*, 329 U.S. 287, 288-289 (1946).

Likewise, the failure to have raisins inspected is serious and affects the entire program. *Id.* at 166-168. Finally, the respondents failed to pay assessments in every year that they handled raisins.

Complainant believes that the imposition of civil penalties on the respondents of $651,200.00, $1,100 per day for each of the 592 days of crop years 2002-2003 and 2003-2004 that they failed to hold raisins in reserve,[6] and $85,800.00 for their failure to obtain inspections and file accurate reports, is necessary to deter them from continuing to violate the Raisin Marketing Order, and to deter other handlers who refuse to comply with the Order's requirements.[7]

For all of the above reasons, respondents should be adjudged to have violated the Act, Order and the Regulations, and the civil penalty recommended by complainant should be imposed.[8] Complainant

---

[6] *See* CX-88 and CX-89 for the starting dates of respondents' reserve requirements for crop years 2002-2003 and 2003-2004.

[7] "It is the intent of Congress that the penalties assessed in this proceeding be a complement to the criminal penalties which the United States Attorneys have the authority to seek, but often do not due to their workload demands. In order to be an effective complement (or alternative) to criminal prosecution, the sanctions imposed in these proceedings should be sufficient to deter such conduct by Respondents and others in the future. An insufficient penalty might be seen by these Respondents or other potential violators as a tolerable cost of doing business, in light of the potential returns available for operating in violation of the Order requirements." *In re Calabrese*, 51 Agric. Dec. at 162 (1992).

[8] "In determining the amount of the civil penalties to be assessed..., it is appropriate to consider the nature of the

requests that the Proposed Order in section IV be entered, and that the respondents be assessed a $737,000.00 civil penalty, and ordered to pay to the Raisin Administrative Committee $6,174.23 in assessments for crop years 2002-2003 and 2003-2004, and $257,288.80 for the dollar equivalent of the raisins they failed to hold in reserve for crop years 2002-2003 and 2003-2004.

DATED: April 14, 2005

Respectfully submitted,

FRANK MARTIN, JR.
Attorney for Complainant
(202) 720-9242

---

violations, the number of violations, the damage or potential damage to the regulatory program from the type of violations involved here, the amount of profit potentially available to a handler who commits such violations, prior warnings or instructions given..., and any such other circumstances shedding light on the degree of culpability involved." *In re Calabrese*, 51 Agric. Dec. at 153-155 (1992).